*In re* MARRIAGE OF JANET DIANE BENNETT, Petitioner-Appellee, and DAVID ARTHUR BENNETT, Respondent-Appellant.

Fourth District   No. 4—91—0244

Opinion filed January 31, 1992.

Howard W. Feldman and Fredric Benson, both of Feldman & Wasser, of Springfield, for appellant.

Thomas R. Appleton and Elizabeth W. Anderson, both of Morse, Giganti & Appleton, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Janet Bennett, petitioned for dissolution of marriage and permanent custody of the parties' two minor children. Respondent filed a counterpetition for dissolution of marriage and for temporary and permanent child custody and support or, in the alternative, joint custody with a specific requirement the children be raised in the Jewish faith. Respondent contended an agreement existed between the parties to raise their children Jewish, and since he is Jewish, the court should grant him custody to insure the children are raised in the Jewish faith. In response, petitioner argued that respondent's contention religious preference and the existence of an agreement entitled him to primary consideration as the custodial parent violated the establishment clause of the United States Constitution.

In a letter dated January 12, 1990, the circuit court stated:

"No formal contract concerning the religious upbringing of the children was entered into by the parties—either in the form of an antenuptial agreement or a settlement agreement."

The circuit court went on to assert the case of *Gottlieb v. Gottlieb* (1961), 31 Ill. App. 2d 120, 175 N.E.2d 219, was inapposite because in that case the parties had *agreed* at the time of dissolution it was in the best interests of the children to be raised in the Jewish faith. Their written agreement was approved by the court. The circuit court here emphasized that the parties in *Gottlieb* made the religious training of the children a factor in determining the best interest of the children rather than it being a court-determined factor. The court here also held it would be violative of the establishment clause to consider the religious beliefs of the parties in awarding custody.

On April 26, 1990, the court entered a judgment order and granted permanent custody to the petitioner with respondent receiving liberal visitation rights, including Jewish holidays. The order did not mention the religious upbringing of the children.

The respondent filed a motion to reconsider the judgment order, contending the circuit court was empowered to order the petitioner to raise their children in the Jewish faith and that this action did not infringe on first amendment rights. In a letter dated August

27, 1990, the court asserted, assuming a contract existed between the parties to raise the children in the Jewish faith, it would have to determine if the enforcement of the contract violated the establishment clause of the first amendment. Applying the standard delineated in *In re Marriage of Goldman* (1990), 196 Ill. App. 3d 785, 554 N.E.2d 1016, the court concluded, without specifically finding a contract existed, that enforcement of such a contract would violate the establishment clause. Accordingly, the court denied respondent's request and this appeal followed.

The issues presented on appeal are whether an implied contract to raise the children in the Jewish faith existed and whether such a contract can be enforced.

Before we can determine whether a contract specifying the religious upbringing of children is constitutionally enforceable, we must first ascertain whether a contract existed. A constitutional question will not be considered if the case can be determined and disposed of on other grounds. *Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 243 N.E.2d 193; *In re Harrison* (1983), 120 Ill. App. 3d 108, 458 N.E.2d 146; *Lake Louise Improvement Association v. Multimedia Cablevision of Oak Lawn, Inc.* (1987), 157 Ill. App. 3d 713, 510 N.E.2d 982.

Even though the circuit court, in its January letter, stated no formal contract existed, we conclude the circuit court did not determine whether an enforceable implied contract existed. Rather, in stating no formal contract existed, the circuit court must have meant that no written contract existed. This assertion accords with the court's analysis of *Gottlieb* and its conclusion that, in the absence of a written agreement, the religious training of the children could not be determined by the court. This determination is reinforced by the circuit court's August letter, in which it specifically declined to resolve the issue of whether a contract existed. Instead, the court assumed, for purposes of analysis, that a contract existed and applied the analysis employed in *Goldman* to determine whether the enforcement of the alleged contract would violate the establishment clause.

■■ Courts of review function to review rulings and judgments of the circuit courts and generally will not pass upon any question as to which the circuit court failed to make a decision. (*Shortridge v. Sherman* (1980), 84 Ill. App. 3d 981, 406 N.E.2d 565; *Board of Education v. Chicago Teachers Union, Local 1* (1975), 26 Ill. App. 3d 806, 326 N.E.2d 158; *Somerset House, Inc. v. Board of Appeals* (1970), 131 Ill. App. 2d 569, 266 N.E.2d 508.) Normally, the exist-

ence of a contract is a question of fact for the trier of fact to determine. (*Sanchez v. Walls* (1978), 59 Ill. App. 3d 75, 78, 375 N.E.2d 138, 140, citing *Trustees of Schools of Township 42 v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 43.) However, for purposes of judicial economy and pursuant to the court's authority under Supreme Court Rules 366(a)(4) and (a)(5) (134 Ill. 2d Rules 366(a)(4), (a)(5)), we will resolve the issue of the existence of a contract rather than remanding the case to the circuit court.

■ The respondent argued an implied-in-fact contract existed to raise the children in the Jewish faith. The respondent cited *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 433 N.E.2d 315, which defined an implied-in-fact contract as a contract which "arises not by express agreement but by a promissory expression which may be inferred from the facts and circumstances which show an intent to be bound." (*Gary-Wheaton Bank*, 104 Ill. App. 3d at 775, 433 N.E.2d at 323, citing *Frey v. Belleville News-Democrat, Inc.* (1978), 64 Ill. App. 3d 495, 498, 381 N.E.2d 705, 708.) However, after defining an implied-in-fact contract, *Gary-Wheaton Bank* continued that both categories of implied contracts were "based on *quantum meruit* or unjust enrichment; a party should not receive a benefit which would be unjust for him to retain without paying for it." (*Gary-Wheaton Bank*, 104 Ill. App. 3d at 775, 433 N.E.2d at 323.) If an implied-in-fact contract is based on the theory of *quantum meruit*, then this legal theory is inapplicable here. It would be absurd to conclude petitioner received a benefit from respondent by allegedly agreeing to raise their children in the Jewish faith, was unjustly enriched as a result, and must pay him to retain the benefit.

■ Furthermore, a contract implied in fact must contain all the elements of an express contract. It consists of obligations arising from an agreement where an agreement has not been expressed in words. The only difference between an implied contract and an express contract is that an express agreement is derived from an actual agreement, either verbal or written, and a contract implied in fact is inferred by consideration of the facts and conduct of the parties. (*Litow v. Aurora Beacon News* (1965), 61 Ill. App. 2d 127, 133, 209 N.E.2d 668, 671, citing *People v. Dummer* (1916), 274 Ill. 637, 640-41, 113 N.E. 934, 935; *In re Estate of Brumshagen* (1960), 27 Ill. App. 2d 14, 23, 169 N.E.2d 112, 116-17.) Therefore, to prevail on this theory, the respondent had to prove the essential elements of a contract, supplied by implication from the parties' con-

duct or actions. *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 14, 365 N.E.2d 316, 319.

●4 The elements of a contract are an offer, a strictly conforming acceptance to the offer, and supporting consideration. (*Marlin v. Government Employees Insurance Co.* (1970), 206 Ill. App. 3d 1031, 565 N.E.2d 197.) Based on the evidence, respondent failed to establish the existence of the elements necessary for an enforceable contract.

An offer is defined as "an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract." (*McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 507, 411 N.E.2d 936, 942.) Nothing in the record evidenced conduct by the respondent which would indicate an offer. Respondent never argued an offer was made. Rather, he continued to insist petitioner agreed to raise the children in the Jewish faith because she participated in the "bris." This statement alone is insufficient to establish a contract. A court cannot assume an offer was made by respondent's statement that petitioner agreed to raise the children Jewish.

Assuming an offer was made, respondent had to prove an unequivocal acceptance. An acceptance is a manifestation of assent to the terms of the offer. Had an offer been proved, respondent could arguably have proved the petitioner agreed to raise the children in the Jewish faith. We note petitioner agreed to raise the children Jewish. She participated in Jewish ceremonies, including the "bris," attended Temple and began conversion classes. Although petitioner did not complete the conversion process and, therefore, did not promise that all children would be raised in the Jewish faith, her participation in Jewish activities with the children evidenced an intent to raise the children Jewish. However, without an offer, there can be no acceptance and no contract.

Finally, a contract will not be enforced without the existence of consideration. Consideration is "any act or promise which is a benefit to the party or [detriment] to the other." (*Libertyville Township v. Woodbury* (1984), 121 Ill. App. 3d 587, 592, 460 N.E.2d 66, 71, citing *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) Detriment means "giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing." (1 S. Williston, Contracts §102A, at 380-82 (3d ed. 1957).) Benefit means "the receiving as the exchange for his promise of some performance or for-

bearance which the promisor was not previously entitled to receive." (1 S. Williston, Contracts §102A, at 380-82 (3d ed. 1957).) The concepts of benefit and detriment are not present in this case. Petitioner, the promisor, received no benefit in exchange for her promise to raise the children in the Jewish faith. Likewise, the respondent, in whose favor the alleged contract was made, did not part with a right which he might otherwise have exerted in exchange for the promise of petitioner. Based on the discussion of the elements of a contract, it is evident a contract implied in fact does not exist.

As a matter of law, respondent has failed to establish the existence of a contract and, therefore, the order of the circuit court denying the respondent's request to require the petitioner to raise the children in the Jewish faith is affirmed.

Even if a contract existed, we would still affirm. In *In re Marriage of Nuechterlein* (1991), 225 Ill. App. 3d 1, this court held that in dissolution proceedings, the circuit court is not bound by a premarital agreement purporting to fix the religion in which the parties' children will be raised. Rather, the court is charged with the duty to protect the welfare of the children by making a careful and independent determination of matters pertaining to custody. While the trial judge made no specific ruling under section 608(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 608(a)), in the interest of judicial economy and because the record is such that a determination may be made, we choose to address the issue. Respondent could only prevail if he proved the *absence* of a specific limitation on the custodian's authority would be contrary to the best interests of the children. There is insufficient evidence to establish the need for any limitation on the custodian regarding the religious training of the children.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.