2018 IL App (1st) 171308

Fifth Division

June 1, 2018

No. 1-17-1308

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| BMO HARRIS BANK, N.A., f/k/a Harris Trust and Savings Bank, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) | No. 14 CH 10965 |
| v. | ) ) | Honorable |
| ARLETA A. PORTER, BRIAN R. PORTER, URBAN PARTNERSHIP BANK, UNKNOWN OWNERS, and NON-RECORD CLAIMANTS, | ) ) ) ) | Michael Francis Otto, Judge Presiding. |
| Defendants | ) ) | |
| (Arleta A. Porter and Brian R. Porter, Defendants and Counterplaintiffs-Appellants). | ) ) ) | |

JUSTICE HALL delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendants, Arleta A. and Brian R. Porter, appeal an order of the circuit court of Cook County that granted plaintiff BMO Harris Bank, N.A.'s[1] (BMO Harris) motion to strike and dismiss defendants' third amended counterclaim with prejudice in a mortgage foreclosure action. For the reasons that follow, we affirm.

¶ 2 BACKGROUND

¶ 3 A. History

¶ 4 Defendants executed a mortgage and equity line of credit agreement with Harris Trust and Savings Bank on October 29, 2001. The initial credit limit was $100,000, although the mortgage indicated that the maximum lien amount for the line of credit was $125,000. According to its terms, the mortgage secured not only the amount then presently advanced under the credit agreement but also "any future amount which Lender may advance to grantor under the Credit Agreement within twenty (20) years from the date of [the] Mortgage. The revolving line of credit obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement and Related Documents."

¶ 5 The credit agreement indicated that the term of the credit line began as of the date of the Agreement and continued until October 29, 2011 (maturity date), and that all indebtedness would be due and payable upon maturity. The agreement further stated that the lender may renew or extend the period during which defendants could obtain credit advances or make payments as well as renew or extend the credit line account itself. Additionally, the credit agreement indicated, within the "Change in Terms" section, that "[w]e may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will

_____

[1]BMO Harris Bank, N.A. is formerly known as Harris Bank, N.A., and Harris Trust and Savings Bank.

unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems)."

¶ 6    The mortgage was in turn secured by real property located at 4505 South Oakenwald in Chicago, Illinois.

¶ 7    Plaintiff filed a foreclosure complaint against defendants in the circuit court on July 1, 2014, based on defendants' failure to pay the loan in full on October 29, 2011. Defendants filed their answer to the complaint on October 1, 2014, in which they only specifically denied paragraphs 3(J) and 4 of the complaint, which state:

> "3(J). Statement as to defaults: Mortgagors have not paid the monthly installments of Principal, taxes, Interest and insurance for 10/29/2011, through the present; the Principal balance due on the Note and the Mortgage is $80,803.11, plus Interest, costs, advances and fees. Interest accrues pursuant to the note, and the current per diem is $6.09.

> * * *

> 4. Plaintiff avers that in addition to persons designated by name herein and the Unknown defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim to have some right, title, interest or line in, to or upon the real estate, or some part thereof, in this Complaint described including but not limited to the following:

> Unknown owners and NonRecord Claimants, if any."

¶ 8    Defendants also filed affirmative defenses, alleging laches and lack of default due to the creation of a contract implied in law. Plaintiff filed a motion to dismiss the affirmative defenses, and in response, defendants amended their affirmative defenses and filed a counterclaim.

¶ 9    Defendants' counterclaim, filed on February 13, 2015, alleged breach of an implied-in-fact contract and breach of an implied-in-law contract. Plaintiff moved to dismiss the amended affirmative defenses and the counterclaim. The trial court set a briefing schedule, and after briefing by the parties, the trial court struck the count alleging breach of an implied-in-fact contract claim with leave to replead and struck the count alleging breach of an implied-in-law contract claim with prejudice.

¶ 10    Defendants subsequently filed an amended counterclaim alleging breach of an implied-in-fact contract, which plaintiff moved to dismiss. Following briefing by the parties, the trial court struck the amended counterclaim with leave to replead.

¶ 11    Defendants filed a second amended counterclaim on their breach of an implied-in-fact contract claim, and plaintiff again moved to dismiss. Following briefing by the parties, including supplemental briefs, the trial court struck the second amended counterclaim with leave to replead.

¶ 12                         B. Third Amended Counterclaim

¶ 13    On June 16, 2016, defendants filed their third amended counterclaim, which is the subject of this appeal. The third amended counterclaim alleged breach of the extension of their credit agreement and breach of an implied-in-fact contract.

¶ 14    Paragraphs 1 through 35 of defendants' third amended counterclaim relate to defendants' count I, titled "Breach of Extension of Credit Agreement."

¶ 15    In paragraph 3, defendants alleged "[t]hat on October 29, 2011, [defendants] and [plaintiff] executed a 12-page Mortgage which secured a revolving line of credit of up to $125,000 with [defendants] as the grantor, and [plaintiff] as the lender."

¶ 16    In paragraph 4, defendants' alleged

"[t]he only reference to the time period covered by said Mortgage in paragraph 3, is the statement 'this Mortgage…shall secure not only the amount which Lender has presently advanced to Grantor under the Credit Agreement, but also any future amounts which Lender may advance to Grantor under the Credit Agreement within twenty (20) years from the date of this Mortgage to the same extent as if such future advance were made as of the date of the execution of this Mortgage, *or until October 29, 2021*." (Emphasis added.)

¶ 17    In paragraph 5, defendants alleged "[t]hat the above-referenced Credit Agreement, secured by the Mortgage at issue, was also executed on October 29, 2001, with a maximum credit amount of $100,000 payable upon maturity on October 29, 2011."

¶ 18    In paragraph 6, defendants alleged "[t]hat the time period of the Mortgage at issue is *unequivocally* for a 20 year term or until October 29, 2021." (Emphasis added.)

¶ 19    In paragraph 7, defendants alleged

"[t]hat page 1 of said Credit Agreement further provided in the 'Term' paragraph: 'You (PORTER) agree that we (Harris Trust and Savings Bank) may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.' Said 'Term' paragraph in the Credit Agreement *does not* require that a renewal or extension of time of the Credit Agreement be in writing." (Emphasis in original.)

¶ 20    In paragraph 8, defendants alleged

"[t]hat page 3 of said Credit Agreement provides in the 'Change in Terms' paragraph that 'We (Harris Trust and Savings Bank) may make changes to the terms of this Agreement *if* you (PORTER) agree to the change in writing at that time, *if* the change will unequivocally benefit you (PORTER) throughout the remainder of your Credit Line Account, *or if* the change is insignificant (such as changes related to our data processing systems).' Thus, a simple reading of the 'Change in Terms' paragraph make it plain that the sentence structure is an '*either or*' basis, rather than an '*either and*' basis. Put another way, the Bank could only make changes to the Credit Agreement *if* PORTER agreed in writing *or if* the change unequivocally benefitted Porter *or if* the change would be insignificant; rather than '*if* PORTER agreed in writing *and if* the change benefitted PORTER *and if* the change was insignificant.' This language is key, as it clearly establishes that the only changes to the Credit Agreement which are required to be in writing are those which will not unequivocally benefit Counter-Plaintiff PORTER."

¶ 21    In paragraph 10, defendants alleged that they physically went into a BMO Harris branch and

"expressly asked the female BMO HARRIS agent-employee whom provided service, that in light of the 20-year period of the actual Mortgage (through October 2021), what steps should be taken by Counter-Plaintiffs to have Counter-Defendant extend the period during which to make payments on the outstanding balance of the Credit Agreement through October 2021, as was contractually provided as an option in the 'Term' section of said Credit Agreement (paragraph 6 above). Said BMO-Harris agent-employee provided [defendant] with a customer service number ***."

¶ 22    In paragraph 11, defendants alleged that they again made payment and contacted plaintiff via the customer service number previously provided and again

> "expressly asked, that in light of the 20-year period of the actual Mortgage (through October 2021), what steps should be taken by [defendants] to have [plaintiff] extend the period during which to make payments on the outstanding balance of the Credit Agreement through October 2021, as was contractually provided as an option in the 'Term' section of said Credit Agreement (paragraphs 6 through 8 above). That in direct response to these inquiries [plaintiff] directed [defendants] to continue to remit regular monthly payments on the outstanding Credit Agreement balance in order to effectuate an extension of time through October 2021 in which to pay the outstanding balance."

¶ 23    Paragraphs 12 and 13 made similar allegations as in paragraph 10 related to payments made by defendants from November 2011 through January 2012.

¶ 24    Paragraph 14 alleged that defendants tendered "in-person on-site payments each and every month to BMO Harris agent-employees" located at certain branches (although for 19 of the payments, defendants indicated "on-site payment location research continues"), and not all of the payments were equal amounts.

¶ 25    Paragraph 15 alleged that at the time of each payment on the credit agreement

> "*secured by the 20 year mortgage*, brief conversations occurred between [defendants] and the BMO Harris agent-employees who serviced [them], and during each and every interchange, the BMO Harris agent-employees reassured [defendants] that continuing to remit regular monthly payments on the Credit Agreement *extended the period of repayment through the time secured by the concurrent mortgage which runs through October 2021*." (Emphasis added.)

¶ 26    Paragraph 16 alleged that plaintiff's direction to defendants to continue to remit regular monthly payments constituted an offer by plaintiff to defendants to extend the contractual period in which to make payments on the outstanding balance through the time secured by the concurrent mortgage which runs through October 2021.

¶ 27    Paragraph 17 alleged that defendants' on-site remittance of regular monthly payments to plaintiff for 31 consecutive months constituted an acceptance of the offer by plaintiff to extend the contractual period in which to make payments on the outstanding balance of the credit agreement.

¶ 28    Paragraph 18 alleged that the offer and acceptance described in paragraphs 16 and 17 to extend the time of repayment under the credit agreement through the period of when the concurrent mortgage ends in October 2021 unequivocally benefitted defendants and was thus not required to be in writing.

¶ 29    Paragraphs 19 through 28 alleged that when defendants went to make the June 2014 payment, it was not accepted; plaintiff filed the foreclosure action in July 2014, and that it was the first time that defendants were made aware that plaintiff was not honoring the extended time for repayment. At that time, defendants sought a loan modification, which was denied. Defendants allege that the denial was based on a credit report with negative information regarding defendants' repayment of the loan at issue and student loan payment information. In paragraph 29, defendants alleged

    "*[t]hat is not routine and customary practice for loan modification requests for homes with large equity balances, and upon which monthly loan payments have never been missed, to be rejected on the basis of student loans which have never been in default or in*

*collections, and which have been current in excess of 2 years and 5 years respectively.*"

(Emphasis added.)

Additionally, defendants alleged in paragraph 30

"*[t]hat in fact, [plaintiff] did not use the two aforementioned student loans which have never been in default or in collections, and which have been current in excess of 2 years and 5 years respectively, as its basis for rejecting the aforementioned loan modification request. Rather, [plaintiff] used its own wrongfully created adverse information on the second mortgage Credit Agreement at issue, after said [plaintiff] was already a party to a binding implied-in-fact contractual extension of said Credit Agreement.*" (Emphasis added.)

¶ 30    Paragraphs 31 through 33 alleged that plaintiff's adverse reporting while accepting regular monthly payments on the "extended implied-in-fact contractual extension of said Credit Agreement at its own direction," "failing and neglecting to inform [defendants] that it considered them in default," and "reliance on the sole non-current account contained in the Transunion Consumer Relations report to deny a loan modification, which said [plaintiff] itself wrongfully created" all amounted to breach of the "implied-in-fact contractual extension of said Credit Agreement." In paragraph 34, defendants alleged that the acceptance of regular monthly payments on the "extended implied-in-fact contract at its own direction" caused them to detrimentally rely on the fact that they had an extended contract, and that they are now unable to secure financing on the credit agreement, all of which amounted to breach of contract.

¶ 31    Paragraph 35 alleged that plaintiff's initiation of the underlying foreclosure action constituted breach of the extended period of the credit agreement.

¶ 32   Paragraphs 36 to 38 related to defendants' count II, titled "Breach of Implied-in-Fact Contract." Paragraph 36 incorporated paragraphs 1 to 35. Paragraph 37 alleged that the offer and acceptance described in paragraphs 16 and 17

> "*connotes a new a [sic] distinct implied-in-fact contractual agreement on the outstanding balance of the loan at issue with the original balance satisfied by the new and distinct agreement, and with repayment of the former balance to be completed in the new and distinct implied-in-fact contract at the end of the term of the mortgage on October 29, 2021.*"

Paragraph 38 alleged that plaintiff's initiation of the foreclosure action constitutes a breach of said implied-in-fact contract.

¶ 33                    C. Plaintiff's Section 2-615 Motion

¶ 34   Plaintiff filed a section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss defendants' third counterclaim with prejudice, in which it argued that defendants' contention of an implied-in-fact contract conflicts with basic contract law and that the claim was otherwise insufficiently pled.

¶ 35   In response, defendants' argued that their counterclaim sufficiently pled a breach of contract cause of action, that dismissal would not be a proper remedy under section 2-615, and that plaintiff's motion was not limited to the face of the counterclaim.

¶ 36   In reply, plaintiff contended that neither the mortgage nor the credit agreement supported defendants' claim and that defendants had not, by the admission in their own pleading, sought a 20-year loan but instead sought an extension of time to pay the balance of the matured loan.

¶ 37    On February 23, 2017, oral argument was held before the trial court on plaintiff's motion to dismiss defendants' third amended counterclaim.[2] The trial court's order indicated that the third amended complaint would be disposed of by separate written order. On March 13, 2017, the court entered a written order which stated in pertinent part:

> "IT IS HEREBY ORDERED that
>
> 1. Pursuant to this Court's Order and findings entered February 23, 2017, the Court finds and holds that:
>
> a. As there is no dispute that money was owed on the subject loan and the [*sic*] is no allegation of sufficient consideration raised to support the claim for an oral contract, there is no binding contract even taking all facts alleged as true.
>
> b. The Court therefore strikes and dismisses defendants' Third Amended Counterclaim with prejudice;
>
> c. There is no just reason for delaying enforcement or appeal or both of this final order."

¶ 38    On March 22, 2017, defendants filed a motion to reconsider the February 23, 2017, order, which was denied on April 27, 2017. Defendants filed a timely notice of appeal on May 22, 2017, seeking a review of the trial court's order striking their third amended counterclaim with prejudice. Defendants subsequently filed a motion in this court to stay the trial proceedings pending review of this interlocutory appeal, which was granted on August 9, 2017.

¶ 39                                   ANALYSIS

---

[2]No transcript of those proceedings was filed in this appeal.

¶ 40    On appeal, defendants challenge the trial court's dismissal of their third amended counterclaim with prejudice on plaintiff's motion pursuant to section 2-615.

¶ 41                                A. Illinois Supreme Court Rule 342

¶ 42    As a preliminary matter, we admonish defendants to heed the Illinois Supreme Court Rules regarding briefing. First, Illinois Supreme Court Rule 342 (eff. July 1, 2017) requires appellants to attach, as an appendix, "a complete table of contents, with page references, of the record on appeal." The purported appendix to appellants' brief is incomplete and does not reflect the requirements of the rule.

¶ 43    Illinois Supreme Court rules are not advisory suggestions but mandatory rules to be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. While failure to abide by the rules may result in the brief being stricken, we nevertheless will address the merits of the appeal. *Hluska*, 2011 IL App (1st) 092636, ¶¶ 57-58.

¶ 44                                B. Guiding Principles

¶ 45    A section 2-615 motion attacks the legal sufficiency of a complaint. *Tyrka v. Glenview Ridge Condominium Ass'n*, 2014 IL App (1st) 132762, ¶ 33. When ruling on a 2-615 motion, a court must accept as true all well-pleaded facts in the complaint, as well as reasonable inferences that may be drawn from those facts. *Tyrka*, 2014 IL App (1st), ¶ 33. A trial court should only dismiss a count or cause of action if it is readily apparent from the pleadings that there is no possible set of facts that would entitle the plaintiff to the requested relief. *Jordan v. Knafel*, 355 Ill. App. 3d 534, 539 (2005). The question for the trial court is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish the cause of action. *Jordan*, 355 Ill. App. 3d at 539.

¶ 46 Our supreme court has emphasized that Illinois is a fact-pleading jurisdiction and that plaintiffs are required to allege sufficient facts to bring a claim within a legally recognized cause of action. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). Although plaintiffs are not required to set forth evidence in a complaint, they also cannot set forth "simply conclusions." *Marshall*, 222 Ill. 2d at 429-30. Conclusory allegations unsupported by specific facts will not suffice. *Marshall*, 222 Ill. 2d at 429-30.

¶ 47 On appeal, our review of a trial court's section 2-615 dismissal order is *de novo*. *DeHart v. DeHart*, 2013 IL 114137, ¶ 18 (citing *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 48 C. Contract Implied in Fact

¶ 49 Defendants contend that their third amended counterclaim sufficiently pleaded a cause of action for breach of an implied-in-fact contract. Specifically, in support of their claim that they sufficiently pleaded consideration, they argue that (1) plaintiff's own complaint and exhibits were a stipulation and admission that defendants were to pay interest as consideration on the outstanding loan balance; (2) defendants' motion for reconsideration stated the new contractual agreement would require defendants to pay between 6% and 18% annual percentage rate as consideration on the balance of the outstanding loan for an additional 120 months; and (3) defendants' third amended counterclaim plainly stated in paragraphs 11, 12, 16, and 17 that part and parcel of the asserted offer and acceptance was for defendants to have a loan balance through the entirety of the new agreement until it ended on October 29, 2021. Defendants also contend that it is clear, through plaintiff's representatives, that plaintiff offered a new and/or modified payment plan of the debt at issue to run until the end of the 20-year mortgage.

¶ 50     We first note that no transcripts from any of the oral arguments in the trial court were included as part of the record in this appeal. Specifically, we are without the findings made by the trial court on February 23, 2017, during the hearing on plaintiff's motion to dismiss defendants' third amended counterclaim, which the court refers to in its March 13, 2017, order. It is defendants' duty, as appellant, to present a sufficiently complete record of the trial court proceedings to support their claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we will presume that the trial court's judgment was in conformity with the law and with sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392.

¶ 51     We thus turn our discussion to whether defendants have sufficiently pled facts to establish a contract implied in fact. Generally, whether a contract implied in fact exists is a question of law, the determination of which is reviewed *de novo*. *Wood v. Wabash County*, 309 Ill. App. 3d 725, 727-28 (1999). The existence of a contract implied in fact, however, depends on the facts, circumstances, and expressions by the parties demonstrating intent to be bound. *Century 21 Castles by King, Ltd. v. First National Bank of Western Springs*, 170 Ill. App. 3d 544, 548 (1988).

¶ 52     A contract implied in fact must contain all elements of an express contract; the only difference between an express contract and an implied contract is that an implied contract is inferred from the facts and conduct of the parties, rather than from an oral or written agreement. *In re Marriage of Bennett*, 225 Ill. App. 3d 828, 831 (1992). Thus, a contract implied in fact arises not by express agreement but, rather by a promissory expression that may be inferred from the facts and circumstances that show intent to be bound. *Kohlenbrener v. North Suburban Clinic, Ltd.*, 356 Ill. App. 3d 414, 419 (2005). Therefore, to sufficiently plead an implied-in-fact

contract, defendants had to plead the essential elements of a contract, supplied by implication from the parties' conduct or actions. *Marriage of Bennett*, 225 Ill. App. 3d at 831-32.

¶ 53    The elements of a contract are an offer, acceptance, and consideration. *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 42. Thus, a contract implied in fact contains all of the elements of a contract, including a meeting of the minds. *Trapani Construction Co.*, 2016 IL App (1st) 143734, ¶ 42. In reviewing defendants' third amended counterclaim, we accept as true all well-pleaded facts and reasonable inferences therefrom, but we need not accept conclusions or inferences which are not supported by specific factual allegations. *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 443 (1993).

¶ 54    We reiterate that our review of a section 2-615 motion is *de novo*. Additionally, we may affirm on any basis or ground for which there is a factual basis in the record regardless of the trial court's reasons. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 586 (2005).

¶ 55    An examination of defendants' third amended counterclaim reveals it is replete with conclusory statements without sufficient facts to support them. We further note that the allegations of the third amended counterclaim are nearly identical to those contained in its predecessors.

¶ 56    Having reviewed defendants' third amended counterclaim as a whole, we find that it failed to establish the elements of a contract implied in fact. We find no evidence of offer, acceptance, or consideration. Nor have defendants shown that there was a meeting of the minds.

¶ 57                              1. Offer and Acceptance

¶ 58    In terms of offer, defendants' conclusion that the maturity date under the terms of the mortgage was "unequivocally" 20 years is unsupported by any facts. Defendants' own pleading indicates that at the time of maturity of the loan, October 2011, they knew they would be unable

to pay the loan off and sought options. Defendants' allegation relies on their interpretation of a contract term within the mortgage, which is itself a conclusion. Defendants made no allegation that they ever in fact relied on it being a 20-year loan until October 2011, and their interpretation fails to consider the plain language of the mortgage, credit agreement, and related documents, which stated that all of the documents were to be considered together and not separately. A court must consider a contract in the context of the entire agreement. *Wilson v. Wilson*, 217 Ill. App. 3d 844, 850 (1991). Additionally, the credit agreement specifically stated that it matured on October 29, 2011. Furthermore, the mortgage indicated that defendants would be in default if they did not meet the repayment terms of the credit agreement. Thus we find no offer of a 20-year loan.

¶ 59    Nor were there any facts presented to support defendants' alternate conclusion that plaintiff affirmatively extended their credit agreement by accepting late payments, thus satisfying the element of offer. Defendants' alleged "brief conversations" with unnamed bank employees at various locations, some which were undisclosed in the pleadings, while making varying payments were factually insufficient to support this conclusion. Defendants made no allegation that these unnamed employees were authorized to offer an extension, and defendants' own alleged behavior of asking each and every month contradicts their allegation that they relied on any perceived extension during the time that they continued to make payments beyond the maturity date of the loan. Defendants did not identify what employees they spoke to, and the listing of dates, payments, and locations was incomplete. We also note that the listing of payments made after October 2011 shows that defendant paid various amounts each month; the amounts paid ranged from just over $200 up to $725.

¶ 60    Defendants' allegations are conclusions; one of which hinges on the construction of language in the mortgage documents that defendants construe in their own favor without factual support. The other conclusion hinges on acceptance of defendants' carving out of certain provisions of the documents and ignoring others without any factual support or agreement by plaintiff. A general allegation that a contract exists without a statement of supporting facts is a mere legal conclusion. *Nuccio*, 257 Ill. App. 3d at 444.

¶ 61    Illinois is a fact-pleading jurisdiction, and conclusory statements are insufficient to sustain a cause of action. *Marshall*, 222 Ill. 2d at 429-30. Defendants' attempt to adopt certain portions of their original loan documents while ignoring others is in dereliction of basic contract law. A contract must be read as a whole, and all parts construed together. *J.M. Process Systems, Inc. v. W.L. Thompson Electric Co.*, 218 Ill. App. 3d 350, 354 (1991). The mortgage, credit agreement, and related documents signed by defendants on October 29, 2001, clearly stated that together they comprise the complete agreement between the parties. Based on a plain reading of those documents, it is clear that defendants' loan was a revolving credit line with a 10-year maturity date (October 29, 2011), at which time the entire balance became due. There was no automatic extension of the repayment terms under the plain language of the contract, nor were defendants entitled to an automatic extension of the repayment terms. To the extent that defendants' third amended counterclaim makes conclusions on the meaning or intention of the original loan documents, we find that it contains insufficient facts to establish that the original mortgage term was 20 years. When interpreting a contract, a court must consider the document as a whole rather than focus on isolated portions. *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 170 (2003).

¶ 62    Here, the mortgage specifically stated that Lender would not relinquish any of its rights under the mortgage unless it did so in writing, that "[t]he fact that Lender delays or omits to exercise any right will not mean that the lender has given up that right," and that "just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests." We believe that plaintiff's acceptance of defendants' payments from 2011-14 was no more than an act of leniency by plaintiff and was not an offer. At most, it was an exercise of plaintiff's discretion under the terms of the mortgage. We therefore conclude that defendants' third amended complaint failed to show that there was a valid offer of a 20-year loan initially or that there was an offer to extend the terms of the loan.

¶ 63                                      2. Consideration

¶ 64    Even if we accepted defendants' contention that there was an offer and acceptance for extension, we still would agree with the trial court that defendants' third amended counterclaim fails to establish any allegation of consideration.

¶ 65    Valid consideration, on the part of both parties, is one of the essential requirements for the formation of a contract. *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 65. In support of their claim that they sufficiently pleaded consideration, defendants contend that (1) plaintiff's own complaint and exhibits were a stipulation and admission that defendants were to pay interest as consideration on the outstanding loan balance; (2) defendants' motion for reconsideration stated the new contractual agreement would require defendants to pay between 6% and 18% annual percentage rate as consideration on the balance of the outstanding loan for an additional 120 months; and (3) defendants' third amended counterclaim plainly stated in paragraphs 11, 12, 16, and 17 that part and parcel of the asserted offer and acceptance was for defendants to have a loan balance through

the entirety of the new agreement until it ended on October 29, 2021. However, the preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration, as there is no detriment. *White v. Village of Homewood*, 256 Ill. App. 3d 354, 357 (1993). For an extension of the payment of a note to be binding on the parties, it must be for a definite period and must be supported by consideration. *Mitchell v. Peterson*, 97 Ill. App. 3d 363, 367 (1981).

¶ 66    According to the terms of the original loan documents, plaintiff was already authorized to charge between 6% and 18% in interest for installments due under the credit agreement. Therefore, the interest payments that defendants reference, not in their third amended counterclaim but in their motion to reconsider, were not additional interest providing consideration for the alleged extension agreement. See *Waters v. Simpson*, 7 Ill. 570, 576 (1845) (payment of interest nothing more than required in original contract is insufficient consideration to support a promise to forbear the collection of the note; such promise would be a mere gratuity and could not be enforced). As such, there was no valid consideration to support defendants' claimed contract implied in fact.

¶ 67                                 CONCLUSION

¶ 68    For the foregoing reason, we affirm the decision of the trial court.

¶ 69    Affirmed.