Peoples Savings and Loan Association, Plaintiff in Error, v. Phoza M. Brinkoetter et al., Defendants in Error.

Gen. No. 8,519.

Opinion filed November 4, 1931.

CARL N. WEILEPP, for plaintiff in error.

DECK, JACK & BOGGESS, for certain defendants in error; THOMAS B. JACK and JACOB L. WALDEN, of counsel.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

In this case a writ of error was prosecuted from a decree of the circuit court of Macon county by the plaintiff in error, Peoples Savings & Loan Associa-

tion. There is no dispute in this case about the facts. Plaintiff in error makes the following statement in regard to the facts:

"This is a writ of error to review the action of the Circuit Court of Macon County in refusing to the complainant in foreclosure proceedings a deficiency decree against Joel B. Williams, Clara A. Williams or Delmar P. Belden, subsequent purchasers after the execution of a mortgage on property purchased by them from Phoza M. Brinkoetter and Alois L. Brinkoetter. There is no dispute as to the facts regarding the mortgage itself, the right to foreclose or any of the proceedings except in relation to the deficiency decree prayed for.

"The defendants in error, the Brinkoetters, on March 25, 1925, borrowed under its usual terms, from the plaintiff in error $4,800 and executed an obligation and mortgage therefor, and were assigned forty-eight shares of stock in the stock of plaintiff in error, according to its by-laws.

"The mortgage was on Lots 15 and 16 in Block 5 of Starr & Mill's First Addition to the City of Decatur, and thereafter while the property was still owned by the Brinkoetters a payment of $400.00 was made on the mortgage and a partial release executed for the North 31 feet.

"The mortgage, among other things, provided:-

" 'IT IS ALSO AGREED, that this mortgage is given by the Mortgagors and accepted by the said Association on the further express condition that in case of a sale of said described premises by the Mortgagors the purchaser thereof, and all persons claiming thereafter under or through such purchaser, shall be deemed to have assumed and to have become bound to pay to said Association the amount which may then be due, or that may hereafter become due, on said Obligation and this Mortgage; provided, however, that nothing in this

paragraph contained shall release the said Mortgagors from personal liability on said Obligation and this Mortgage.'

"After obtaining the partial release on October 21, 1926, the Brinkoetters conveyed all of these lots by warranty deed to the defendants in error, Joel B. Williams and Clara A. Williams as joint tenants, the deed to the Williams reciting: 'Also subject to a mortgage of ($5050) and a lumber bill to Lyons Lumber Company for $350.' The proof showed that this $5050.00 was the complainant's mortgage and a second mortgage thereon.

"Thereafter on February 24, 1927, the Williams conveyed this property by warranty deed to the defendant in error, Delmar P. Belden, and recited in the deed as follows: 'This deed is made subject to a mortgage to the Peoples Savings and Loan Association the unpaid portion of which is $4143.73.'

"When the Brinkoetters conveyed this property to Williams, he traded for other properties, both the properties of the buyer and the seller being taken at an agreed value, and when Williams conveyed this property to Belden, they entered into a contract of exchange by which it was stated that Belden took the property subject to a loan of $4143.73, held by the Peoples Savings and Loan Association, payable $55.20 per month. Also subject to a straight loan of $800.00 held by the Millikin National Bank on the store building on the rear of said lots. (This was the property for which the partial release was obtained.) Williams paid Belden $50.00 in cash to adjust the difference in values between the two properties.

"There was actually due to the Association at this time the said sum of $4143.73, which fact was ascertained by Williams and Belden.

"Belden took possession of this property and continued in the record ownership of the same until the

foreclosure. He thereafter sold part of this property, described as 'The South 121 feet of Lot 15 and the West 8 feet of the South 121 feet of Lot 16 in said Block 5,' on September 26, 1927, to Carrie A. Hill, reciting in this contract that it was to be conveyed by good and sufficient warranty deed, free and clear of all encumbrances whatever, upon payment by Mrs. Hill as specified. He reserved the right to put a lien on said property and deliver the deed subject to the loan and when the contract had been paid down to the amount of the loan, Mrs. Hill took possession of this property and continued to pay regularly $42.50 on the first of each month until February 1, 1930, and thereafter by written cancellation she and Belden cancelled the contract. Belden made payments to the Loan Association of interest at various times and on one payment, on August 6, 1929, paid $110.00 which was the interest and a payment of $8.51 on the principal of the mortgage.

"The testimony shows that Belden was informed of the mortgage at the time of the execution of his deed. That inquiry was made and the exact amount due on the mortgage was ascertained and inserted in the deed. That he took the deed and recorded it. That he received the pass book furnished by the complainant with the mortgage, and his various payments were entered in such pass book as made by him. That the pass book provided for a monthly payment of $55.20. That the pass book stated that for a copy of the charter and the by-laws or other desired information, application should be made at the office of the Association.

"Belden never kept up the payments as provided in the mortgage, and upon the date of default of the mortgage, there was due $300.04 more than the amount due when he accepted his deed and it was defaulted by the Board of Directors on March 17, 1930 in the sum of $4423.77. In addition, Belden insured the property in

his name and on or about July 16, 1929, he made application to the complainant for a new mortgage on said premises in the name of Thomas and Carrie Hill, signed by himself, which application was refused by the complainant. He thereafter requested the complainant at various times for a partial release on this mortgage but never obtained same.

"This whole case now brings up the question as to whether the knowledge of the clause in the complainant's mortgage and the taking of the property subject to the mortgage, and the acts of Belden thereafter, are sufficient to constitute a personal liability against Belden for the deficiency judgment which occurred upon the sale of this property under foreclosure."

The covenant in the mortgage involved in the foreclosure proceeding referred to in the foregoing statement, namely, that in case of a sale of the mortgage premises by the mortgagor, the purchaser thereof and all persons claiming the premises thereafter through or under such purchaser, shall be deemed to have assumed and to have become bound to pay the plaintiff in error the amount which may then be due or thereafter become due on the mortgage, was a contract entered into solely between the mortgagor and the mortgagee; and yet was intended to bind third persons not parties to the contract. It is elementary law that third persons cannot be bound by a contract thus made which is personal in its character and effect, unless such third persons have become parties to it, either by expressly or impliedly assuming the obligations thereof. The plaintiff in error insists that the defendants in error became bound by the covenant referred to as a matter of law by the mere fact that they became purchasers of the premises, and as such purchasers respectively accepted the deeds conveying the premises and which deeds provided by a clause inserted therein that the conveyance was made subject to the mortgage

of the plaintiff in error for the unpaid portion of the mortgage indebtedness; and that the defendants in error had notice of covenant by the record of the mortgage, which contained the provision that each of them would incur a personal liability to pay the mortgage indebtedness. It is conceded by the plaintiff in error that that was no express assumption of the obligation by the defendants in error to pay the mortgage indebtedness; but it insists that such assumption of the obligation to pay the indebtedness is legally implied from the fact that they respectively became partners and accepted the deed of conveyance of the premises. We cannot agree with this contention. In *Siegel v. Borland,* 191 Ill. 107, the Supreme Court said:

"Neither in the contract nor in the subsequent deed to the Siegels, was there any assumption whatever of the debt secured by the trust deed or any agreement to pay it or any part of it. The deed was to be made and was made subject to the trust deed. The contract and deed not only failed to imply any assumption of the debt, but rather excluded the implication. Complainant can only establish the liability of appellants by proving a contract to assume and pay the debt or some part of it. To sustain the decree the facts proved must amount to an agreement to pay the $25,000 upon the debt secured by the trust deed. It is true that a contract may be implied, and that if the amount of an encumbrance is included in and forms a part of the consideration which a grantee promises to pay for premises, and he retains that part of the purchase price, the law will create a personal liability against him, on the ground that he has agreed to pay such indebtedness. In such a case the law presumes that the grantee has agreed to apply the money so retained for the purpose of paying the encumbrance. Either there must be an express assumption of the indebtedness, or the amount must be allowed in the purchase price so that the law will imply the promise."

It is not contended, and the evidence does not show, that the mortgage indebtedness was included in or formed any part of the consideration for the purchase price of the mortgaged premises, which would form a legal basis for an implied assumption of the mortgage indebtedness. We conclude, therefore, that the court did not err in refusing to enter a deficiency decree against the defendants in error.

The decree is therefore affirmed.

*Affirmed.*