BIANCA KOHLENBRENER, as Ex'r of the Estate of Robert M. Kohlenbrener, Deceased, Plaintiff and Respondent-Appellee, v. NORTH SUBURBAN CLINIC, LTD., *et al.*, Defendants (Ronald S. Adelman, Indiv., *et al.*, Petitioners-Appellants).

First District (6th Division)   No. 1—03—1381

Opinion filed March 18, 2005.

Ronald S. Adelman, of Chicago, for appellants.

Rothschild, Barry & Myers, of Chicago (William G. Myers, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

The parties to the instant appeal ask us to determine whether a fee agreement between attorneys and their client survived the client's death, allowing the executor of the client's estate the benefit of the agreement's cost-control provisions. We hold that the conduct of the parties demonstrates a clear intent to continue the agreement, and we affirm the order denying the attorneys' request for a declaration that the agreement terminated with the client's death.

Robert Kohlenbrener, a founder and long-time shareholder of North Suburban Clinic, Ltd., a closely held medical corporation, was involuntarily ousted from the corporation's ownership ranks after his retirement from the practice of medicine. Kohlenbrener was told by North Suburban representatives that his shares in the corporation were worthless, but North Suburban paid $30,000 for the shares to forestall any dispute regarding the action. Shortly thereafter, the corporation was sold in its entirety in a transaction which paid North Suburban's other owners more than $1 million each for their shares in the enterprise.

Kohlenbrener contacted Ronald Adelman, an attorney and family friend, to discuss the possibility of litigation against North Suburban and several of his former partners. Adelman referred him to another attorney, Loren Mallon, of the firm Tishler & Wald; Mallon agreed to represent him. In June 1996, Mallon addressed to Kohlenbrener and his wife, Bianca Kohlenbrener, a proposed representation agreement which included the fee arrangement suggested by the attorneys to govern their compensation for representation in the North Suburban litigation. The letter proposed compensation in the form of a combination of contingent and noncontingent fees: Kohlenbrener would pay the attorneys' hourly rates up to a $25,000 cap and would also pay contingent bonuses ranging from 20% to 30% of any recovery, depending on the point in the litigation process at which the North Suburban defendants made payment. The fee arrangement proposed by the letter credited the hourly fees Kohlenbrener paid against the total sum providing the basis for the calculation of the contingency bonus payment. Mallon's letter elaborated, "Although we cannot guarantee any

result whatsoever, we do think—based on our experience and on the facts you have provided to us—that you have an excellent case. This is the reason that we are willing to risk an investment of our time in the form of a partial contingency once the $25,000 in non-contingent compensation has been paid." The agreement was signed by Mallon and both Kohlenbreners, and purported to have been copied to Adelman, but did not include Adelman as a signatory. Kohlenbrener ultimately paid $25,000 in hourly fees to Tishler & Wald.

Mallon represented Kohlenbrener in litigation against the North Suburban defendants that was initially unsuccessful: the trial court dismissed one of Kohlenbrener's counts against the defendants and found in the defendants' favor on the remaining claims. In contemplation of an appeal of the trial court's action, Mallon and Adelman entered into an agreement with Kohlenbrener which governed the fees to be paid for appellate representation. The May 1999 agreement, which took the form of a letter from Adelman to Robert Kohlenbrener, and was signed by Adelman, Kohlenbrener, and Mallon, provided that Adelman and Mallon, who by this time had launched a solo practice, would represent Kohlenbrener for the appeal and specified that the attorneys would charge an hourly fee of $250 and that fees and costs for the appeal "will be capped at $30,000.00." The agreement also explained the limitations of the cap: "The $30,000.00 cap applies only to this appeal to the First District Appellate Court. If there is any further appeal to the Illinois and/or U.S. Supreme Courts, then hourly fee billing will resume, subject to negotiation of a new cap."

The agreement further specified circumstances upon which a contingent fee would be payable to the attorneys: "[If] any court of review either awards damages to you or remands your case for a new trial, then the contingent fee shall be applicable, in which event Loren and I shall be jointly entitled to one third (33.33%) of any damages awarded to you *after* you been [sic] credited for all hourly attorneys' fees paid in this matter to Tishler & Wald at the trial level and to Loren and me for this appeal." (Emphasis in original.) Kohlenbrener ultimately paid $30,000 to the attorneys for hourly fees relating to the appeal.

The attorneys' appellate representation of Kohlenbrener proved successful: in June 2000, this court reversed the trial court's dismissal of one of Kohlenbrener's claims against the North Suburban defendants; reversed the findings in favor of the defendants on two other claims, and remanded for trial.

Robert Kohlenbrener passed away in March 2001. His widow, Bianca Kohlenbrener, became executor of his estate. The parties agree that Mrs. Kohlenbrener expressed to the attorneys her desire to utilize

their services to continue the litigation against the North Suburban defendants. The parties further agree that no additional discussions regarding the terms of the representation took place and that they entered into no specific written or oral agreement regarding the terms of representation and compensation.

Mrs. Kohlenbrener, as executor of her husband's estate, was substituted as the plaintiff in the litigation against the North Suburban defendants. In October 2002, following three days of trial presentation, Mrs. Kohlenbrener and the defendants agreed to settle her claims for a payment of $100,000.

Mallon subsequently sent to Mrs. Kohlenbrener a proposed settlement approval document that authorized the attorneys to dismiss her action with prejudice in exchange for the $100,000 payment. The document sought her approval of a division of the $100,000 payment, which granted $33,333.33 in "Contingent Attorneys' Fees" to Mallon and Adelman. In a telephone discussion of the settlement process, Mrs. Kohlenbrener asked the attorneys why their proposed division of the settlement proceeds had not credited the hourly fees previously paid by her husband, and requested a copy of the 1999 contingent fee agreement. Shortly thereafter, Loren Mallon passed away; his interests have since been represented by Roberta Mallon, the executor of his estate.

The North Suburban defendants delivered the settlement payment to the clerk of the court and the claims against them were dismissed; at the same time, the trial court retained jurisdiction to adjudicate the fee dispute between Mrs. Kohlenbrener and her attorneys. The attorneys recommended that the trial court initially determine whether the 1999 fee agreement survived; they suggested that if the agreement did not govern their compensation, they were entitled to *quantum meruit* compensation and that they would submit billing records in support of their fee claim. The court agreed, and the attorneys then sought a declaratory judgment that the agreement terminated with the death of Robert Kohlenbrener. The trial court denied the attorneys' declaratory judgment motion, and this appeal followed.

The attorneys contend that because an attorney-client relationship generally terminates upon the death of the client (*Clay v. Huntley*, 338 Ill. App. 3d 68, 76 (2003)), their fee arrangement with Robert Kohlenbrener did not survive his passing. In addition, they cite the well-settled principle that in the event of an early termination of a contingency-based representation, an attorney is entitled to be compensated for the reasonable value of his services. *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 230 (1979). In asserting a

right to reasonable compensation, which they assert to be an unspecified amount not limited by the payment credits contained in the 1996 and 1999 agreements, the attorneys argue that they undertook the representation of Mrs. Kohlenbrener as a completely new client, without regard to the prior contingent fee agreements signed by her husband. In our view, the record demonstrates otherwise.

The attorneys' treatment of their representation of Mrs. Kohlenbrener as a contingency matter is definitively demonstrated by the label they used in the proposed disbursement approval agreement to describe the funds to be paid directly to them. Mallon's document acknowledged $100,000 in "Adjusted Gross Settlement Proceeds," identified "Contingent Attorneys Fees" of "33.33% ($1/3$ of adjusted gross recovery)," listed the attorneys' respective shares as $19,666.67 for Mallon and $13,666.66 for Adelman, and identified $66,666.67 as "Net Settlement Proceeds To Client."

Seeking to avoid the impact of this language, the attorneys claim that the contingent fee label in the approval document was merely "mistakenly used," and that the proposed fee was actually the amount they believed at the time to be "a fair and reasonable fee in *quantum meruit.*" Since acceptance of this characterization would require the conclusion that the proposal of compensation of precisely one-third of Mrs. Kohlenbrener's recovery was entirely unrelated to any prior contingency arrangement, and was instead based upon some estimate of the value of the work provided by the attorneys, it would perhaps be anticipated that some explanation of the $33,333.33 figure's derivation would have been presented to Mrs. Kohlenbrener and provided to the trial court as evidence of the attorneys' conduct of the representation as if no contingency agreement existed. The record before us, however, offers no such explanation. The record does not suggest that the attorneys made any contemporaneous attempt to communicate to Mrs. Kohlenbrener their expenditure of time or resources in the course of her representation. In contrast, the record clearly establishes that during the period of representation which allowed the attorneys to charge Robert Kohlenbrener their hourly fees before reaching the caps imposed by the 1996 and 1999 fee agreements, they provided advance estimates of anticipated expenditures, advised Kohlenbrener that he would be billed regularly, and collected payments for their hourly fee billings up to the cap amounts established by the two agreements. Since the attorneys expressed no intent to treat the 1999 contingency agreement as terminated, presented no evidence of conduct consistent with their prior practice under hourly fee arrangements, identified their due compensation as a contingency fee payment, asked for the sum which would have been payable under the contingency fee agree-

ment, and identified no other basis for the calculation of that sum, we are not persuaded that they had any intent other than to apply the terms of the 1999 agreement to Mrs. Kohlenbrener.

Mrs. Kohlenbrener filed an affidavit which asserted that the attorneys never advised her that the fee agreement they had signed with her husband ended at the time of his death and that she "always assumed, and acted on the assumption, that the Attorneys would continue to handle the litigation and would do so on the basis of the fee agreement reached with Robert."

It is thus apparent that the parties conducted themselves as if the attorneys' representation of Mrs. Kohlenbrener would be governed by the terms established by their agreement with her husband. The fact that this agreement was not reduced to writing does not negate its validity; under such circumstances, Illinois law recognizes the formation of an implied contract. "A contract implied in fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *Estate of Jesmer v. Rohlev*, 241 Ill. App. 3d 798, 803 (1993). An implied-in-fact contract may be found by examination of the acts of the parties even in the absence of any express statement of specific agreement regarding the details of the contractual relationship. *Jesmer*, 241 Ill. App. 3d at 804, *Century 21 Castles by King, Ltd. v. First National Bank of Western Springs*, 170 Ill. App. 3d 544, 548-49 (1988).

We believe that the record demonstrates the existence of an implied-in-fact contract between Mrs. Kohlenbrener and the attorneys to extend the terms of her husband's agreement to the representation they provided for her. We accordingly affirm the trial court's denial of the attorneys' requested declaration that the 1999 fee agreement was inapplicable.

Affirmed.

FITZGERALD SMITH, P.J., and TULLY, J., concur.