2025 IL App (1st) 231878

No. 1-23-1878

Opinion filed March 25, 2025

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PAPER SOURCE LLC, a Delaware limited liability company, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | 22 L 7454 |
| v. | ) ) | Honorable |
| SUGAR BEETS, INC. d/b/a MAMAN, a New York corporation, | ) ) ) | Thomas M. Donnelly, Judge, presiding. |
| Defendant-Appellee. | ) ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Navarro concurred in the judgment and opinion.
Justice Oden Johnson dissented, with opinion.

**OPINION**

¶ 1     This appeal concerns an attempt by an assignee in bankruptcy to claim breach on a contract

that was never assigned and to which the assignee was not a party. Plaintiff Paper Source, LLC,

appeals the circuit court's order dismissing its fourth amended complaint. 735 ILCS 5/2-615 (West

2022). Plaintiff's complaint was predicated on an alleged breach of a co-tenant agreement between

defendant and a now defunct entity, Paper Source, Inc. Pursuant to a bankruptcy court's order,

plaintiff purchased substantially all the assets of Paper Source, Inc. That bankruptcy court order

expressly assigned a joint lease with defendant, but it did *not* include or reference the co-tenant

agreement with defendant. On appeal, plaintiff contends that the circuit court erred in dismissing its complaint alleging that defendant breached the co-tenant agreement because (1) when the bankruptcy court assigned plaintiff the joint lease, it also by implication included the co-tenant agreement and (2) an implied contract exists between plaintiff and defendant on terms identical to the co-tenant agreement. For the following reasons, we affirm the dismissal of plaintiff's complaint.

¶ 2                               I. BACKGROUND

¶ 3      Paper Source, Inc., an Illinois corporation ("Paper Source Illinois") and defendant Sugar Beets, a New York corporation, entered into a 12-year lease agreement with 114 N Aberdeen Partners, LLC. The agreement provided that Paper Source Illinois and Sugar Beets collectively would be the "Tenant" of the property and would be jointly and severally responsible for all obligations under the lease. Each party was responsible for the payment of rent, taxes, and utilities, among other duties. In the event that Paper Source Illinois and Sugar Beets failed to pay rent within five days of written notice of the need to pay rent, they would be in default on the lease. Upon default, the landlord was authorized to terminate the lease and recover "the entire balance of the Term Rent and additional charges due over the entire Term of this Lease, which shall become immediately due and payable by Tenant, along with all overdue Rent and charges."

¶ 4      When Paper Source Illinois entered into the joint lease, it also entered into a co-tenant agreement with defendant. The joint lease was incorporated into the co-tenant agreement, which also memorialized the rights and duties of the two companies to one another as co-tenants under the lease. The agreement defined the proportion of rent, tax, and expense obligations each company

shouldered, as well as the consequences of one party's default. In particular, the non-defaulting party could accelerate all rent due under the lease.

¶ 5     In March 2021, Paper Source Illinois filed for Chapter 11 bankruptcy in the Eastern District of Virgina. *In re PSI Liquidation, Paper Source, Inc., et al.*, Case No. 21-30660 (Bankr. E.D. Va. Jan. 25, 2022). Pursuant to the bankruptcy, Paper Source Illinois entered into an asset purchase agreement to sell substantially all of its assets to plaintiff Paper Source, LLC, then known as Papershop Holdco, Inc., on May 10, 2021. The bankruptcy court approved the agreement on May 13, 2021. As part of the agreement, Paper Source Illinois assigned the joint lease with defendant to plaintiff. However, the agreement did not mention the co-tenant agreement, and the schedule to the bankruptcy court's order approving the sale did not reference or otherwise identify the co-tenant agreement. Following the approval of the sale, on May 24, 2021, plaintiff, defendant, and the landlord amended the joint lease agreement to extend the lease term an additional year and to decrease the minimum rent due, among other provisions.

¶ 6     For the next several months, defendant made rent and other payments to plaintiff consistent with its obligations under the co-tenant agreement. However, on November 16, 2021, the landlord sent the parties a notice of default, which plaintiff settled. Defendant had stopped making timely payments and refused to reimburse plaintiff for the default settlement. In response, plaintiff declared defendant in default under the co-tenant agreement, terminated the co-tenant agreement, and demanded acceleration of all rent through July 2032. Subsequently, defendant provided payments to plaintiff in the proportion outlined under the co-tenant agreement for the months that had not been paid.

¶ 7     On August 18, 2022, plaintiff filed suit against defendant. Plaintiff has since amended its complaint four times. The fourth amended complaint asserted claims for breach of contract or, alternatively, breach of implied contract. Plaintiff sought to enforce the rights and remedies under the co-tenant agreement and joint lease. Particularly, plaintiff alleged that it was entitled to $3.6 million in accelerated rent. Defendant moved to dismiss, and the circuit court granted the motion and dismissed the fourth amended complaint with prejudice. This timely appeal followed. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 8                                 II. ANALYSIS

¶ 9     Plaintiff argues that the circuit court erred in dismissing its complaint because it sufficiently pleaded breach of contract or, alternatively, breach of implied contract. A section 2-615 motion to dismiss "tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted." *Project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 18. On a motion to dismiss, the circuit court must "accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The circuit court may only dismiss a complaint if "it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Project44, Inc.*, 2024 IL 129227, ¶ 18. We review such a dismissal *de novo*. *Id.*

¶ 10                          A. Breach of Contract

¶ 11    The circuit court dismissed the complaint because it determined that plaintiff had failed to allege facts showing that plaintiff was a party to the co-tenant agreement. Because a plaintiff must be able to plead "the existence of a valid and enforceable contract" in order to state a claim for

breach of that contract, the determination that plaintiff was not a party to the co-tenant agreement was fatal to its claim. *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28 (stating the elements of a breach of contract claim). Plaintiff argues that this conclusion was erroneous because, "[u]nder federal bankruptcy law, the assignment of the Lease in the Paper Source Bankruptcy included in the assignment any other agreement that, as a matter of state law, was factually inseparable from the Lease." This statement may well accurately reflect federal bankruptcy law, but this court is not a federal bankruptcy court or "a court of review for federal court decisions." *Yang v. City of Chicago*, 195 Ill. 2d 96, 102 (2001). Accordingly, it is beyond the power of this court to modify, expand, or supplement an order of the bankruptcy court.

¶ 12 There is no question that the co-tenant agreement *could* have been assigned to and assumed by plaintiff. See 11 U.S.C. ¶¶ 105, 365 (West 2020). There are myriad federal cases where the bankruptcy court determined that contracts assigned in bankruptcy were inseparable from related contracts that were not. See *In re FPSDA I, LLC*, 470 B.R. 257, 268 (Bankr. E.D.N.Y. 2012) (collecting cases); *In re Karfakis*, 162 B.R. 719, 724-25 (Bankr. E.D. Penn. 1993) (collecting cases). Plaintiff has not cited a single case, however, nor could we find a case, where a *state court* determined that a contract that was not explicitly assigned in bankruptcy was inseparable from a contract that was assigned. The absence of any authority from any jurisdiction to support plaintiff's argument reinforces the conclusion that this court may not make such a determination. This conclusion is further supported by the fact that the co-tenant agreement included an anti-assignment provision that provides "neither party shall have the right to sublet its portion of the Leased Premises or assign this Agreement without the prior written consent of the other party." A federal bankruptcy court has explicit, statutory authority to summarily invalidate such pre-petition

provisions to effectuate the assignment of a contract. See 11 U.S.C. § 365(f)(1) (West 2020). Illinois appellate courts, however, lack this power. See *Village of Riverdale v. Nosmo Kings, LLC*, 2023 IL App (1st) 221380, ¶ 19 (concluding that a restraint on the transfer of a property interest is valid and enforceable subject to a rule of reason).

¶ 13 Moreover, as plaintiff concedes "the Bankruptcy Court did not resolve or address at all whether, as a matter of federal bankruptcy law or Illinois contract law, the assignment of the Lease effected an assignment of the inseparable Co-Tenant Agreement." The asset purchase agreement before the bankruptcy court made no mention of the co-tenant agreement. Plaintiff thus essentially argues that it is entitled to an asset it claims to be worth $3.6 million by omission, but there are simply no facts in the record to suggest that the bankruptcy court intended, even implicitly, to assign the co-tenant agreement to plaintiff. Reading the bankruptcy court's order any other way would amount to an impermissible expansion of that ruling. The combined lack of factual or legal support is conclusive of the issue: having failed to secure an assignment in the bankruptcy court, a litigant cannot later seek to modify the bankruptcy court's assignment in a state court proceeding.

¶ 14 Any argument that defendant somehow ratified the co-tenant agreement similarly fails. Ratification occurs when the parties to a voidable contract act as if a valid contract had been formed and thereby make valid an otherwise invalid agreement. See *Illinois State Bar Association Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164-65 (2004) ("[I]f a contract is merely voidable, a party can either opt to void the contract based upon that defect, or choose, instead, to waive that defect and ratify the contract despite it."). Importantly, for the parties to be able to ratify a voidable contract, either the parties to the voidable contract must be the same as the parties seeking to ratify the contract (see Restatement (Second) of Contracts § 380 (1981)

(listing the circumstances when a contract becomes voidable, such as incapacity or duress, but may be ratified by the conduct of the parties)); see also 17A C.J.S. Contracts § 185 ("Ratification must be accomplished by one with the power to ratify, and only the parties to the agreement have the power to ratify it.") or else must be acting on behalf of the party seeking to ratify the contract. See *Stathis v. Geldermann, Inc.*, 258 Ill. App. 3d 690, 699 (1994) ("Ratification takes place when the principal with knowledge of the material facts regarding an unauthorized transaction takes a position inconsistent with non-affirmation of the transaction; another means of ratification occurs where the principal retains the benefit of the transaction."); *Perry v. Nevin Hotel Co.*, 349 Ill. App. 22, 36-37 (1952). Neither situation is present here. Plaintiff was not a party to the co-tenant agreement, and Paper Source Illinois did not act on behalf of plaintiff. Both companies are distinct entities that were at all times acting in their own interests.

¶ 15    In short, we do not have the authority to modify the bankruptcy court's order assigning only the joint lease agreement. But even if we did, plaintiff's argument that the joint lease agreement and co-tenant agreements are "inseparable" fails under state law. The construction of a contract is a question of law that we review *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). The goal in contract interpretation is to "ascertain and give effect to the intent of the parties." *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 757 (2004). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher*, 226 Ill. 2d at 233. In determining whether the parties intended to make two documents inseparable, Illinois courts have concluded that "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be

construed together." *Id.* However, "such instruments must be construed as separate agreements when there is evidence that the parties intended for the documents to be read separately." *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 31.

¶ 16    Here, plaintiff does not argue that the parties to the contracts were the same, nor could it. The joint lease was between the landlord as lessor and Paper Source Illinois and defendant as lessees. The co-tenant agreement was between Paper Source Illinois and defendant alone. Instead, plaintiff argues that an exception applies:

> "Where two or more contracts are part of the same transaction and relate to the same subject-matter, are known to all the parties, and are delivered at the same time to accomplish an agreed purpose, such contracts must be construed together as parts of the same transaction; and this is so even though the contracts are not executed between the same parties." *Hagerman v. Schulte*, 349 Ill. 11, 20 (1932).

But plaintiff's reliance on *Hagerman* is misplaced. There are no allegations in the complaint that the landlord was aware of the co-tenant agreement when it was executed, thus the co-tenant agreement was not "known to all the parties." *Id.*

¶ 17    Even if this court were to infer that the landlord knew about the co-tenant agreement, *Hagerman* remains inapposite. There, the contracts between the parties were "interdependent, having reference to one another." *Id.* Here, the co-tenant agreement makes repeated reference to the joint lease. Indeed, the co-tenant agreement is wholly dependent on the joint lease; without it, the co-tenant agreement could not exist. However, it is not enough for one contract to depend on another; instead, the contracts must depend on and reference *each other*. The joint lease makes no reference to the co-tenant agreement, and the existence of the lease in no way depends on an

agreement between the tenants.

¶ 18　　Additionally, the lease contains an integration clause stating that it is "the sole and entire agreement." The Illinois Supreme Court has made clear that an "integration clause *** is a clear indication that the parties desire the contract to be interpreted solely according to the language used in the final agreement." *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 465 (1999). Reading the co-tenant agreement as inseparable from the joint lease would be inconsistent with the intent of the parties to make the joint lease the entire agreement. Further, the fact that each tenant is jointly and severally liable for all obligations under the joint lease is additional evidence that the joint lease is agnostic as to the existence of an agreement between the parties. The obligations under the joint lease must be fulfilled regardless, and the parties' legal rights and duties under that agreement would not be affected in any way if no co-tenant agreement were to exist. In short, plaintiff is a stranger to the co-tenant agreement, and the circuit court correctly dismissed its breach of contract claim.

¶ 19　　　　　　　　　B. Breach of Implied Contract

¶ 20　　Plaintiff next argues that the circuit court erred in concluding that, in order for plaintiff to be entitled to the remedy of the acceleration clause of the co-tenant agreement, the parties had to agree "separately and specifically, to the remedies provision of the adopted written agreement." Instead, plaintiff contends, defendant's actions could create a new implied contract with all of the same terms as the co-tenant agreement. Instead, defendant admits that an implied agreement existed between the parties, but denies that the scope of the agreement sweeps as broadly as the original co-tenant agreement.

¶ 21    Even where parties had no express agreement, a contract may be implied if "the facts, circumstances, and expressions by the parties demonstrat[e an] intent to be bound." *BMO Harris Bank, N.A. v. Porter*, 2018 IL App (1st) 171308, ¶ 51. An implied contract is a true contract and "must contain all elements of an express contract." *Id.* ¶ 52. Thus, to plead an implied-in-fact contract, plaintiff must plead an offer, acceptance, and consideration. *Id.* ¶ 53. Further, "[a]n enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract." *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). We review *de novo* whether plaintiff alleged facts which, if proven, would establish that the parties entered into an implied contract with the same terms as the co-tenant agreement. See *Porter*, 2018 IL App (1st) 171308, ¶¶ 45, 47, 51.

¶ 22    Plaintiff's complaint fails to allege any facts suggesting that the parties agreed to abide by the acceleration clause in the co-tenant agreement. The complaint asserts that defendant continued to pay plaintiff rent and other lease expenses over the course of several months consistent with defendant's obligations under the co-tenant agreement. But the continued payment of rent only implies a contract term requiring defendant to pay that amount of rent. It does not imply any additional terms. The complaint also asserts that defendant never denied the existence of the co-tenant agreement or its application to the parties in this case. However, defendant never affirmed that the co-tenant agreement applied here either; therefore, defendant's silence does not imply anything in favor of or against concluding that an implied agreement existed here.

¶ 23    Additionally, plaintiff contends that defendant indicated through email communications that it had "no problem whatsoever" with plaintiff pursuing remedies under the acceleration clause of the co-tenant agreement. But this email exchange between defendant's and plaintiff's

representatives does not suggest that defendant acquiesced to plaintiff's authority to invoke the acceleration clause of the co-tenant agreement. While defendant's representative did state that, "[i]f [invoking the acceleration clause] is the route that [plaintiff] would like to go, [he had] no problem whatsoever \*\*\*," at most the statement indicates that plaintiff was welcome to try enforcing the agreement. However, at no point did defendant concede that it was bound by that agreement. The other email exchanges between the parties make no reference to the acceleration clause of the co-tenant agreement. Instead, the parties discuss payment of arrears to the landlord, apportionment of rent under the lease, and how the parties will interact going forward. None of these facts support the conclusion that defendant believed that it was bound by all of the terms of the co-tenant agreement that it had entered into with the original Paper Source. See *Mamacita, Inc. v. Colborne Acquisition Co., LLC*, No. 10 C 6861, 2011 WL 881654, \*3-4 (N.D. Ill. Mar. 11, 2011).

¶ 24    Moreover, whether defendant believed that it was bound by the acceleration clause is not relevant to whether it actually was bound. Courts determine the scope of an implied contract's terms by the objective actions of the parties; "[i]t is not compelling that the parties share a subjective understanding as to the terms of the contract." *Cheever*, 144 Ill. 2d at 30. "In other words, the parties' belief of what the agreement is must coincide \*\*\* with the parties' conduct, if an implied-in-fact contract is to be formed." *Spectra-4, LLP v. Uniwest Commercial Realty*, 772 S.E.2d 290, 295 (Va. 2015). Thus, plaintiff must be able to show an objective action that implies a specific term of the contract in order for that term to be included in the contract; plaintiff cannot do so here. There is no allegation of a specific action from defendant that demonstrates assent to the acceleration clause term of the co-tenant agreement.

¶ 25    Plaintiff argues that our decision in *Kohlenbrener v. North Suburban Clinic, Ltd.*, 356 Ill. App. 3d 414 (2005), mandates a different result on this issue. There, Kohlenbrener entered into a fee agreement with his attorneys to file a lawsuit, but he subsequently died before the case was resolved. *Id.* at 416-18. His wife, acting as executor of his estate, continued the litigation. *Id.* We determined that the attorneys were bound by "an implied-in-fact contract *** to extend the terms of [Kohlenbrener's] agreement." *Id*. at 419. We concluded that

> "[s]ince the attorneys expressed no intent to treat the 1999 contingency agreement as terminated, presented no evidence of conduct consistent with their prior practice under hourly fee arrangements, identified their due compensation as a contingency fee payment, asked for the sum which would have been payable under the contingency fee agreement, and identified no other basis for the calculation of that sum, we are not persuaded that they had any intent other than to apply the terms of the 1999 agreement to Mrs. Kohlenbrener." *Id.* at 418-19.

*Kohlenbrener* is distinguishable from the case before us on several grounds.

¶ 26    While the language of the opinion in *Kohlenbrener* is sweeping and broad, its holding is not. There, only one provision of the contract between the decedent and the attorneys was at issue: the calculation of attorney fees. Moreover, Mrs. Kohlenbrener acted as the executor of her husband's estate, thus she acted as "the representative of the decedent," meaning *Kohlenbrener* hews more closely to the principles of contract ratification. See *Estate of Venturelli v. Granville National Bank*, 54 Ill. App. 3d 997, 1002 (1977); *Auto Driveway Franchise Systems, LLC v. Auto Driveway Richmond, LLC*, No. 18 CV 4971, 2019 WL 3302223, *5 (N.D. Ill. July 23, 2019) (quoting *Spectra-4, LLP*, 290 Va. at 47) ("[T]he material terms of [a] prior contract *** survive

intact *** [w]hen the *same parties* are engaged in the same course of dealing both during and after the expiration of the express contract. *Absent such circumstances*, an implied-in-fact contract may include only the particular terms of a previously expired express contract *which the parties' subsequent actions *** specifically encompass*." (Internal quotation marks omitted and emphasis added.)).

¶ 27    Plaintiff contends that adopting such a provision-by-provision approach to determining the scope of implied contracts "would create an unmanageable and illogical system," but the opposite is true. "[C]ourts view the act of contracting as volitional and the terms within a contract as the thoughtful result of a bargained-for exchange." *Portage Park Capital, LLC v. A.L.L. Masonry Construction Co., Inc.*, 2024 IL App (1st) 240344, ¶ 15. Simply because one party interacts with another party in a manner consistent with the first party's contractual obligations to a third party does not mean that the second party is bound by the same contractual terms as the third party. Such a conclusion would undermine the necessity of mutual assent in creating a contract. See *Porter*, 2018 IL App (1st) 171308, ¶ 53. One party cannot unilaterally impose the terms of a contract onto another party. See *Meinders v. United Healthcare Services, Inc.*, 7 F.4th 555, 563 (7th Cir. 2021) (quoting *Peoples Savings & Loan Association v. Brinkoetter*, 263 Ill. App. 391, 395 (1931)) (" 'It is elementary law that third persons cannot be bound by a contract thus made which is personal in its character and effect ***.' "). Any expansive statements in *Kohlenbrener* are inconsistent with these settled principles of contract law and thus judicial *dicta* afforded no weight. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 278 (2009) ("[A] judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous." (Internal quotation marks omitted.)). Therefore, the circuit court did not err in dismissing the implied contract claim. Having

determined that the parties did not have an express or implied contract containing an acceleration clause, we need not address parties' remaining arguments.

¶ 28                                    III. CONCLUSION

¶ 29    The judgment of the circuit court of Cook County is affirmed.

¶ 30    Affirmed.


¶ 31    JUSTICE ODEN JOHNSON, dissenting:

¶ 32    I disagree with the majority's finding that the trial court properly dismissed plaintiff's fourth amended complaint with prejudice on defendant's section 2-615 (735 ILCS 5/2-615 (West 2022)) motion. The issues raised by Sugar Beets' motion to dismiss are all determinations of fact and do not demonstrate facial defects of the complaint. The question is simply whether plaintiff plead enough to establish a cause of action; and I believe the answer is yes.

¶ 33    Here, upon review of the fourth amended complaint and the accompanying exhibits, I conclude that the circuit court erred in dismissing Paper Source Delaware's allegations related to the joint lease and first amended joint lease. The fourth amended complaint clearly alleged that Paper Source Illinois, Sugar Beets, and the landlord executed the joint lease in October 2019 for premises located at 114 N. Aberdeen in Chicago, and that both Paper Source Illinois and Sugar Beets were considered collectively as the "tenant" who were jointly and severally liable under the joint lease. This allegation was supported by the joint lease attached to the fourth amended complaint and signed by all parties. Additionally, the fourth amended complaint alleged, and the lease provided, that Paper Source Illinois and Sugar Beets were entitled to utilize the premises as cotenants for their respective businesses in exchange for specified monthly rental payments over

a 12-year period. The fourth amended complaint also alleged that Paper Source Illinois and Sugar Beets moved into the property and commenced business. Thus, the fourth amended complaint sufficiently alleged that Paper Source Illinois, Sugar Beets, and the landlord had a valid contract, which was not disputed by Sugar Beets.

¶ 34    Likewise, the fourth amended complaint sufficiently alleged that the parties to the joint lease executed a first amendment to the lease in May 2021, which was supported by a signed copy of that amendment attached as an exhibit to the complaint. Sugar Beets does not dispute the existence or validity of the first amendment to the lease.

¶ 35    Paper Source Delaware also alleged facts in its fourth amended complaint that showed the chain of events which led to it being the successor owner of Paper Source Illinois. The complaint alleged that Paper Source Illinois, Sugar Beets, and the landlord subsequently executed a first amended joint lease in May 2021, while Paper Source Illinois was amidst bankruptcy proceedings that included the sale of its assets. The first amended joint lease acknowledged such sale and assignment of the joint lease to a subsequent buyer, as well as adjusted monthly rental payments and extended the lease term by one year. Paper Source Illinois was subsequently bought by Papershop, which eventually became Paper Source Delaware under the terms of an asset purchase agreement. An examination of the asset purchase agreement reveals that it contained a schedule of the assets and liabilities included in the sale, and the joint lease for the premises at 114 N. Aberdeen was included. Thus, Paper Source Delaware, as successor in interest to Paper Source Illinois, became a cotenant under the joint lease and by extension, the first amended joint lease. Accordingly, I find that the fourth amended complaint sufficiently alleged that Paper Source Delaware, Sugar Beets and the landlord were parties to the joint lease and the first amended joint

lease by virtue of the asset purchase agreement under the bankruptcy proceedings. Those facts were supported by verbiage in the first amended joint lease, copies of the bankruptcy court's order and the asset purchase agreement which evidenced the assumption of the joint lease. Sugar Beets does not dispute the existence or validity of those allegations or supporting documentation.

¶ 36   It is clear that Paper Source Delaware sufficiently alleged the existence and validity of the joint lease, the first amendment, and its successor in interest relationship in the fourth amended complaint. I now examine whether the fourth amended complaint sufficiently alleged breach of those contracts and conclude that it did.

¶ 37   First, the fourth amended complaint alleged the type of events that constituted default under both the joint lease and first amended joint lease, namely the nonpayment of rent and additional costs. These allegations were supported by attached copies of the joint lease and first amended joint lease. Paper Source Delaware further alleged that Sugar Beets defaulted under the joint lease and first amended joint lease by failing to pay its proportionate portion of the rent and additional costs due under the joint lease. Sugar Beets does not dispute these allegations. I accordingly find that the fourth amended complaint sufficiently alleged breach of the joint lease and first amended joint lease and that Paper Source Delaware was a proper party to raise those allegations as a successor in interest to Paper Source Illinois. Therefore, I conclude that the circuit court erred in granting Sugar Beets' motion to dismiss the fourth amended complaint's breach of contract claims based on the joint lease and first amended joint lease.

¶ 38   With respect to the cotenant agreement, I believe that the issue before this court is whether the fourth amended complaint sufficiently alleged facts showing that the cotenant agreement was included as part of the asset purchase agreement. It appears that neither party disputes that Paper

Source Illinois and Sugar Beets executed a joint lease with the landlord for the purpose of jointly renting a commercial property for the operation of their respective businesses. While the joint lease collectively referred to the parties as "tenant," neither party disputes that each party was responsible for and paid their proportionate share of the rent and additional costs required under the joint lease and as outlined in the cotenant agreement prior to the default events noted above. Nor does either party argue that the cotenant agreement was not a valid and enforceable contract (the exception being Sugar Beets' arguments concerning the acceleration clause which will be discussed below); there is just the matter of who the actual parties to the contract were, which in essence, is the crux of Paper Source Delaware's case.

¶ 39    As previously noted, a section 2-615 motion tests the legal sufficiency of the complaint based on defects apparent on its face. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. To survive a section 2-615 motion, a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action. *Id*. The court should only consider facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Id*.

¶ 40    A review of Sugar Beets' section 2-615 motion to dismiss reveals that it primarily attacks the factual sufficiency of Paper Source Delaware's fourth amended complaint. For example, Sugar Beets' 2-615 motion argues that the attachments included with the fourth amendment complaint fail to establish a meeting of the minds for Sugar Beets to be bound to the penalty provisions of the cotenant agreement. To survive the 2-615 motion, the fourth amended complaint need only to have alleged some facts sufficient to bring a claim within a legal cause of action. As noted above, the fourth amended complaint alleged that Paper Source Delaware was the successor in interest to

the cotenant agreement and that Sugar Beets breached that agreement. Those facts, taken as true, were sufficient to raise the issue of breach of contract and to survive a 2-615 motion. Accordingly, I would find that the circuit court erred by granting the motion to dismiss this issue.

¶ 41 Further, I would find that the issue of whether the cotenant agreement was included in the asset purchase agreement as part of the joint lease assignment as part of the bankruptcy case and whether there was a meeting of the minds regarding the continuation of the penalty provision in the cotenant agreement raise factual questions that cannot be decided on the pleadings alone. Rather, those are factual issues to be determined when construing the contracts along with all of the evidence to be considered. In contract interpretation, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together. *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 31. However, such instruments must be construed as separate agreements when there is evidence that the parties intended for the documents to be read separately. *Id.* Those are facts to be developed during the evidentiary phase of the trial court proceedings and not determined on a section 2-615 motion which only attacks the legal sufficiency of a complaint.

¶ 42 Moreover, the issue of whether there was a *de facto* assignment of the cotenant agreement is a question of fact that cannot be determined on the pleadings alone. The creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances. *Brandon Apparel Group v. Kirkland and Ellis*, 382 Ill. App. 3d 273, 283 (2008). It is very clear from the record that the argument raised by Sugar Beets in its motion

to dismiss concerning the cotenant agreement are not attacks on the legal sufficiency of the allegation, but rather are challenges to the facts themselves, which is an inappropriate basis for granting of a section 2-615 motion. Taking the well-pleaded allegations that the cotenant agreement was part of the assignment, and that Sugar Beets breached that contract as true and viewing them in the light most favorable to Paper Source Delaware as we must, I would find that the fourth amended complaint sufficiently raised a breach of contract claim. Accordingly, I would reverse the circuit court's dismissal of the breach of contract claim against Sugar Beets for the cotenant agreement.

¶ 43    Paper Source alternately argues that the parties had an implied-in-fact contract based on the parties' performance under the cotenant agreement after the assignment of the joint lease (count II of the fourth amendment complaint). In the absence of an express contract, an implied contract can be created as a result of the parties' actions. *iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶ 32. Illinois courts recognize two types of implied contracts- those implied in fact and those implied in law. *Id.* Contracts implied in fact arise from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound. *Id*.

¶ 44    A contract implied in fact is a true contract. *Trapani*, 2016 IL App (1st) 143734, ¶ 42. The elements of a contract are an offer, acceptance, and consideration. *Id.* Thus, a contract implied in fact contains all the elements of a contract, including a meeting of the minds. *Id.* Generally, for a contract to be valid, an acceptance must be objectively manifested; if it is not, there is no meeting of the minds. *Id*. ¶ 43. However, acceptance of a contract implied in fact can be proven by circumstances demonstrating that the parties intended to contract and by the general course of

dealing between the parties. *Id*. Here again, resolution of this issue requires factual findings that are not appropriate on a 2-615 motion to dismiss. Generally, whether a contract implied in fact exists is a question of law, the determination of which is reviewed *de novo*. *Trapani Construction Co., Inc. v. Elliott Group, Inc.*, 2016 IL App (1st) 143734, ¶ 35. The existence of an implied contract, however, depends on the facts, circumstances, and expressions by the parties demonstrating an intent to be bound. *Id.* When those facts are disputed, the existence of a contract is a question for the trier of fact to decide. *Id.* Moreover, whether the parties intended to enter a contract is also a question of fact for the trier of fact to decide. *Id*.

¶ 45     As stated above, all that was required to survive a section 2-615 motion to dismiss were facts alleging the existence of an implied in fact contract and breach. In this case, as alleged in the fourth amended complaint, the joint lease and the cotenant agreement were executed on October 19, 2019. The joint lease set forth the rights and responsibilities of the parties, specifically to Paper Source Illinois and Sugar Beats collectively as jointly and severally liable tenants. Similarly, the cotenant agreement set forth the rights and responsibilities of the cotenants regarding their responsibilities under the joint lease agreement. The parties presumably performed under the joint lease and cotenant agreement and a first amendment was executed in May 2021, which referenced the pending bankruptcy procedures and made additional changes to the joint lease. Once Paper Source Delaware became a cotenant under the joint lease after the assignment, the parties continued to adhere to the terms of the cotenant agreement regarding proportionate payments and due dates. The record reflects that at all times, the parties have been represented by counsel and Sugar Beets clearly had no issue with the terms of the cotenant agreement including the acceleration clause when it first executed it in October 2019. The email attachments to the fourth

amended complaint that reflected "surprise" on the part of Sugar Beets' president that Paper Source Delaware sought to invoke the penalty clause in no way contradicts the fact the acceleration clause remained unchanged as there were no changes to the cotenant agreement once Paper Source Delaware assumed operations. The fourth amended complaint further alleged that Sugar Beets failed to pay their proportionate share of the rent and thus breached the implied in fact contract. Accordingly, I would find that the court also erred in dismissing count II of the fourth amended complaint at the pleading phase and accordingly reverse and remand.

*Paper Source, LLC v. Sugar Beets, Inc.*, 2025 IL App (1st) 231878

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-7454; the Hon. Thomas M. Donnelly, Judge, presiding. |
| **Attorneys for Appellant:** | William J. Ryan and Joseph R. Swee, of Scandaglia Ryan LLP of Chicago, for appellant. |
| **Attorneys for Appellee:** | Joseph R. Marconi, Carlos A. Vera, and Adam J. Sedia, of Johnson & Bell, Ltd. of Chicago, for appellee. |